**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JODY W.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 20 C 7298** |
| **v.** | ) | |
| | ) | **Magistrate Judge Beth W. Jantz** |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social Security,**[2] | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Jody W.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 16, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [dkt. 21, Def.'s Mot.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

## BACKGROUND

### I.    Procedural History

On January 26, 2018, Plaintiff filed a claim for DIB and SSI, alleging disability since April 30, 2014, due to degenerative disc disease, osteoarthritis, herniated disc, spinal stenosis, fibromyalgia, arthritis in lower back, bursitis, chronic obstructive pulmonary disease, acid reflux, and migraines.  [Dkt. 10-1, R. 313-25, 342.]  Plaintiff also had previously filed a claim for DIB and SSI benefits on May 29, 2012, which was denied after a hearing before an ALJ on April 29, 2014. [R. 67-112, 113-26.]  Rather than appealing that decision, Plaintiff reapplied, and Plaintiff's second claim was denied initially and again upon reconsideration.  [R. 215, 220, 226, 230.] Plaintiff again requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 5, 2018. [R. 67-112.] Plaintiff personally appeared and testified at the hearing and was represented by counsel.  [R. 34.]  Medical expert Dr. Allen Heinemann also testified [R. 55-60], as did Vocational expert ("VE") Susan Entenberg.  [R. 61-66.]  On December 30, 2019, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 10-31.]  The Social Security Administration Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner.  [R. 1-6.]

### II.    The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process.  [R. 14-15.]  The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 30, 2014.  [R. 16.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: COPD/emphysema; cervical spine degenerative disc disease with stenosis; mild lumbar spine degenerative disc disease; obesity; asthma; major depressive disorder; and general anxiety

disorder. [R. 16.] The ALJ also found that Plaintiff had a medically determinable impairment of hypothyroidism, but that it was nonsevere because it does not significantly limit her ability to perform basic work activities for 12 consecutive months. [R. 16.] The ALJ likewise found that Plaintiff had mild carpal tunnel syndrome and had been treated for hyperlipidemia, GERD, constipation due to opioid use, and hemorrhoids, but that these conditions were either controlled with medication and/or did not result in significant work-related limitations for a continuous duration of 12 months. [R. 16.] The ALJ also noted that the record indicated that Plaintiff had a history of fibromyalgia and that she had considered this, consistent with Social Security Ruling 12-2p, but found that the objective record did not show sufficient evidence to establish that Plaintiff's fibromyalgia was a medically determinable impairment. [R. 17.]

The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 17-19.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations:

> [S]he can occasionally stoop, crawl, crouch, kneel, balance, and climb ramps or stairs. She can never climb ladders, ropes or scaffolds. She should avoid concentrated exposure to extreme temperatures, humidity, wetness, and dust, odors, fumes and gases. She is limited to simple, repetitive and routine, 1-3 step instructions, with routine changes only. She should have only occasional contact with the general public. She needs to work primarily alone, having only occasional contact with coworkers. She cannot perform work requiring fast-paced or high production quotas.

[R. 19.] At step four, the ALJ concluded that Plaintiff would not be able to perform her past relevant work as a server and hostess. [R. 24.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 24-25.]

**DISCUSSION**

**I.      Judicial Review**

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).  "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court.  42 U.S.C. § 405(g); *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).  Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted).  "To

determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837; *see also Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## II.    Analysis

Plaintiff argues that the ALJ (1) improperly undermined Plaintiff's documented limitations in concentrating, attending to tasks, and interacting with others; (2) failed to support her assessment of medical source opinions; (3) improperly discredited Plaintiff's reports of pain and

5

resulting limitations; and (4) ignored Plaintiff's significant upper extremity limitations. [Dkt. 16, Pl.'s Mem. at 6-15; dkt. 23, Pl.'s Reply at 1-3.] After reviewing the record and the briefs submitted by the parties, this Court agrees that the ALJ did not support her assessment of the medical source opinions with substantial evidence. Because this failure alone warrants remand, the Court does not reach Plaintiff's additional arguments.

Plaintiff takes issue with the ALJ's decision to credit the opinion of a non-treating, non-examining psychological expert, Dr. Heinemann, while finding unpersuasive the medical opinions provided by her primary care provider (Dr. Olson), her treating psychiatrist (Dr. Bear), and her therapist (Joan Juhnke). [Dkt. 16 at 11-13.] As Plaintiff's claim for benefits was filed after March 17, 2017, the evaluation of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under that regulation, the opinions of treating physicians are not entitled to special deference or controlling weight. Rather, opinions from any medical source are evaluated against certain factors, including 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of time the source has treated the claimant, the frequency of examinations, and the purpose and extent of the treatment relationship, and whether the relationship was an examining one; 4) the source's specialization; and 5) other factors. 20 C.F.R. § 404.1520c.

The "most important factors"—and the only factors that the ALJ is required to discuss in her decision—are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to consistency, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical

sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §404.1520c(c)(2).

While the ALJ need not discuss the treatment relationship, it is notable that the ALJ chose to credit the medical opinion of someone who did not examine or treat the Plaintiff, while disregarding the opinions of three of Plaintiff's treaters, all of whom gave relatively consistent opinions based on lengthy relationships with the Plaintiff. While there is no inherent error with the ALJ's decision to credit a non-treating source over a treating source, the ALJ gave only cursory conclusions regarding the supportability and consistency factors—some based on inaccurate representations of the record—and failed to support her rationale with substantial evidence. These errors require remand.

Each of the treating providers—Dr. Olson, Dr. Bear, and Joan Juhnke, LCPC—opined, *inter alia,* that Plaintiff experienced chronic pain and would have trouble staying on task. [R. 1367-70, 1392-94, 2707.] Both Dr. Bear and Dr. Olson opined that Plaintiff would be off task more than 30% of the workday and would be absent from work 5-6 days per month. [R. 1369, 2707.] Dr. Bear further explained that Plaintiff experienced difficulties with day-to-day functioning due to a combination of physical issues and depression, and noted on the form that Plaintiff's impairments were mostly due to medical issues. [R. 1370.] Joan Juhnke likewise opined that Plaintiff's physical pain exacerbates her depression and anxiety, and that she struggles to interact with others, make appointments, and complete tasks. [R. 1392.] Ms. Juhnke further opined that Plaintiff's illness had a marked impact on her ability to sustain concentration and attention, resulting in frequent failure to complete tasks, and, in another part of the form, explained that Plaintiff struggles with attending to task, cognitive processing, and significant confusion due to her symptoms of depression, anxiety, and PTSD. [R. 1393.] Ms. Juhnke also noted that Plaintiff

was engaged in her mental health treatment and would probably make more progress except for her chronic pain. [Id.]

Meanwhile, Dr. Heinemann, who had not examined or treated the Plaintiff, testified at the hearing that Plaintiff would have no limitation in understanding, remembering, and applying information; moderate limitation in interacting with others; moderate limitation in concentration, persistence, or pace; and mild limitation in adapting and managing herself. [R. 57-59.] Dr. Heinemann further opined that Plaintiff could work a job involving simple, routine, and repetitive tasks; occasional interaction with supervisors, coworkers, and the public, and a routine and predictable setting where stressful encounters were minimized. [R. 59.]

As to the supportability factor, the ALJ found Dr. Heinemann's opinion persuasive "because it was supported by a thorough explanation ... based on his review of the available medical evidence." [R. 22.] In his testimony, Dr. Heinemann supported his conclusion that Plaintiff did not have "marked impairments" with a discussion of Plaintiff's GAF scores and of a few treatment notes where Plaintiff's therapist described how she coached Plaintiff through episodes of anxiety. [R. 58-59.] Later in the testimony, when opining that Plaintiff would not need additional time off task [R. 60], Dr. Heinemann did not discuss or cite to any additional support.

The ALJ also found that Dr. Heinemann's opinion was "consistent with the treating records as a whole, including the assessments and GAF scores suggesting only mild to moderate symptoms." Meanwhile, the ALJ found the opinion of Dr. Bear was not persuasive, stating that it was "not supported by Dr. Bear's own treating notes, which show mild or moderate symptoms due to mental health impairments" and citing to three separate GAF scores assessed by Dr. Bear—a score of 65 on July 16, 2015 (R. 769), a score of 55 on February 4, 2016 (R. 821-22), and a score

of 55 on March 17, 2016 (R. 833-34). [R. 23.] The ALJ also stated that Dr. Bear's opinion was "inconsistent with the opinion and explanation given by the medical expert, and it is inconsistent with the course of treatment, which was primarily limited to medication prescribed by the claimant's primary care provider and does not show any psychiatric hospitalizations." [R. 23.] For similar reasons, the ALJ found Joan Juhnke's opinion unpersuasive, stating simply that it was "inconsistent with the overall conservative treatment records, which show essentially mild to moderate symptoms," and citing again to the series of GAF scores. [R. 23.]

The Court finds that neither the decisions to credit Dr. Heinemann's opinion, nor the decisions to reject the opinions of Dr. Bear and Ms. Juhnke, are supported by substantial evidence. First, the ALJ relied heavily on the idea that Plaintiff's GAF scores did not support the opined limitations, but the Seventh Circuit has explicitly warned against relying on GAF scores to assess disability status in the Social Security context, specifically because "the score does not reflect the clinician's opinion of functional capacity." *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (explaining that GAF scores ... are measures of both severity of symptoms and functional level," and "the final GAF rating always reflects the worse of the two"). While the Court in *Denton* held that a claimant cannot use a GAF score to *establish* disability, the reason for that finding is equally applicable to the situation here. While a "mild" or "moderate" GAF score *might* be considered contradictory of an opinion that a patient has "marked" functional limitations, it is not obvious why a "mild" or "moderate" GAF score would necessarily contradict a mental health provider's opinion that their patient would have several absences or be off task for 30% of an 8-hour workday due to mental health symptoms exacerbated by chronic physical pain. *See Martinez v. Astrue*, No. 9 C 3051, 2010 WL 1292491, at *9 (N.D. Ill. Mar. 29, 2010) ("GAF scores are intended to be used to make treatment decisions, ... not as a measure of the extent of an individual's

disability."); *Curry v. Astrue,* No. 3:09–cv–565, 2010 WL 4537868, at *7 (N.D. Ind. Nov. 2, 2010) ("GAF scores are more probative for assessing treatment options rather than determining functional capacity and a person's disability.").  The ALJ appears to equate a "mild" GAF score with the Social Security regulations' definition of a "mild" limitation, but they are not the same. The Court notes that even a "mild" GAF score of 65 is explained as *either* "[s]ome mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g. occasional truancy, or theft within the household) but generally functioning pretty well, has some meaningful interpersonal relationships." [R. 769.]  Here, the ALJ has not offered any further explanation to guide the Court in understanding why a "mild" GAF score—which, by definition, might include "*occasional truancy,*" [id.]—is necessarily inconsistent with the mental health providers' opinions about Plaintiff's likelihood of work absences and time off task. *See Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015) (the ALJ "must adequately articulate her analysis so that we can follow her reasoning").

Moreover, the ALJ appears to have made several factual errors in stating that Plaintiff's course of mental health treatment was "primarily limited to medication prescribed by the claimant's primary care provider and does not show any psychiatric hospitalizations." [R. 23.]  In fact, the record demonstrates that Plaintiff *had* experienced at least one psychiatric hospitalization at some point in her history (though not during the time period at issue in this case) due to a suicide attempt. [R. 708.]  Moreover though, her mental health treatment was not limited to medication management through her primary care provider. While Plaintiff did have occasional periods of medication management by her primary care provider (for example, her PCP managed her psychiatric medications until Thresholds was able to link her with a psychiatrist, Dr. Bear, in June 2015, and her PCP renewed her Prozac prescription in May 2018 after she ran out), Plaintiff

otherwise was consistently treated by psychiatrist Dr. Bear between June 2015 and December 2018. [R. 708, 755-59, 1370.] Moreover, Dr. Bear's treatment notes indicate his belief that "medications [were] only part of a treatment for her," she would continue to have problems with mood even with medications, and that "[t]herapy will be a very important part of her treatment." [R. 755-59.] And, in addition to psychiatric services, Plaintiff also received regular case management and individual counseling from Thresholds from 2015 through at least 2018, and had also been prescribed twice weekly group therapy (though the records do not indicate that she attended). [R. 703, 706, 708, 737.] Also of note, her mental health treatment records from Thresholds frequently comment on her chronic pain, depression and tearfulness caused by her pain, and problems with forgetfulness (including forgetting to eat and forgetting treatment appointments). [R. 727-38, 766-69, 781, 835, 872, 953.]

The ALJ did not discuss Plaintiff's treatment history at Thresholds in any detail, and, as detailed above, appears to be mistaken about the course and nature of Plaintiff's mental health treatment. These factual errors cast serious doubt on the ALJ's finding that the opinions of Dr. Bear and Joan Juhnke were "inconsistent" with Plaintiff's "conservative" course of treatment, and the Court therefore cannot find that the ALJ's decision to reject those opinions was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Additionally, the ALJ's explanation for rejecting the medical opinion of Plaintiff's primary care physician, Dr. Olson, is also unsatisfying. The ALJ found that Dr. Olson's opined limitations—that Plaintiff would need to lie down or recline for 4 hours in an 8-hour workday, cannot stand or walk more than 15 minutes at a time, can sit less than 1 hour in an 8-hour workday, would need unscheduled breaks every 20 to 30 minutes so she could lie down, could never lift 15

pounds or more, and would be "off task" more than 30 percent of the workday and absent more than 5 days per month—were not persuasive because Dr. Olson's own treating records showed that Plaintiff had normal gait and strength. [R. 23-24.] But again, it is unclear how normal gait and strength negate the explanation, consistently given by Plaintiff's providers, that it was Plaintiff's chronic *pain* that caused these limitations, particularly with regard to opined work absences and time off task.

Plaintiff also argues that the ALJ erred by ignoring her upper extremity limitations; undermined her documented limitations in concentrating, attending to tasks, and interacting with others; and disregarded her subjective reports of pain and resulting limitations. [Dkt. 16 at 8-11, 13-15.] Because the Court finds that the ALJ's assessment of medical opinions is not supported by substantial evidence, the Court need not reach these additional arguments, though the Court does note that the ALJ's treatment of the medical opinions is highly intertwined with the consideration of Plaintiff's limitations in concentrating, attending to tasks, and interacting with others and Plaintiff's reports of chronic pain. Plaintiff is free to raise her additional arguments with the ALJ on remand.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 16] is granted, and the Commissioner's motion for summary judgment [dkt. 21] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date:  9/28/23

_____
BETH W. JANTZ
United States Magistrate Judge